CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

DEC 1 6 2005

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, JR., et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> VIRGINIA M. JUNE, Guardian for ROBERT F. JUNE, SR., <br><br> *Defendant.* | CIVIL ACTION NO. 3:03CV00052 <br><br><br> MEMORANDUM OPINION <br><br><br><br> JUDGE NORMAN K. MOON |

Before the Court is the Plaintiffs' (the "Receiver") Verified Motion for Partial Summary Judgment, filed on September 23, 2005. In this motion, the Receiver moves the Court pursuant to Fed. R. Civ. P. 56 to enter partial summary judgment against Virginia M. June as Guardian for her father, Robert F. June, Sr. ("the Defendant"), as to the amount of the Defendant's disgorgement obligation owed to the Receiver. The Defendant filed a response to the Receiver's motion on October 31, 2005, to which the Receiver replied on November 10, 2005. The Defendant then filed a reply on November 18, 2005. The matter is, therefore, ripe for the Court's determination. For the reasons detailed below, the Court will grant the Receiver's Motion for Partial Summary Judgment, finding that the Defendant received a total of $348,862.50 in Vavasseur-related profit distributions.

**I. Facts**

1

The factual background surrounding the Ponzi scheme operated by Terry L. Dowdell is familiar to the Court. Beginning in April 1998 and continuing through 2001, Dowdell operated a classic Ponzi scheme through a Bahamian based corporation known as the Vavasseur Corporation ("Vavasseur"). Dowdell marketed Vavasseur to investors as a business entity involved in trading medium-term debentures and other private bank debt. To perpetuate his scheme, Mr. Dowdell would simply use the money contributed by the newest investors to pay earlier investors their promised "profits." He would then misappropriate the remaining funds, transferring at least $29 million to business associates, family, and friends. In January 2001, the Securities and Exchange Commission ("SEC"), later joined by the Federal Bureau of Investigation, initiated an investigation into the Vavasseur program. The investigation to date has identified at least seventy-six direct investors, with an undetermined number of subinvestors, who contributed to the fraudulent investment program. While the exact amount of investors' loss is as yet unknown, it is estimated to exceed of $121 million.

To facilitate recovery of these losses, Judge James H. Michael, Jr., the presiding United States District Judge at the time, appointed Roy M. Terry, Jr. and the law firm of DuretteBradshaw PLC as Receiver for Terry L. Dowdell and his various business entities by Orders entered July 12, 2002 (Terry L. Dowdell, Dowdell, Dutcher & Associates, Inc. and Emerged Market Securities, DE-LLC), September 17, 2002 (Authorized Auto Services, Inc.), and February 18, 2003 (Vavasseur Corporation). On May 14, 2003, Judge Michael entered an Order reappointing Roy M. Terry, Jr. and DuretteBradshaw PLC as Receiver as to Terry L. Dowdell and all of the aforenamed business entities.

The Receiver filed this action against the Defendant on June 10, 2003, asserting claims of

2

unjust enrichment and fraudulent conveyance. The Receiver claims that the Defendant was a Vavasseur investor, but that unlike many such investors, the amount of his investment was repaid in full. In addition to the recovery of investment principal, the Receiver asserts that the Defendant received substantial "earnings" on his Vavasseur investment and that he knew or should have known that these "profits" were the proceeds of a scheme to defraud subsequent investors rather than genuine investment profits.

The Motion for Partial Summary Judgment before the Court relates to the precise amount of these Vavasseur-related "profits" received by the Defendant. The Receiver moves the Court to enter partial summary judgment in favor of the Receiver and against the Defendant as to four issues of fact: (1) that the Defendant has conceded to receipt of $287,362.50 in Vavasseur-related profit distributions; (2) that the $25,500.00 received by the Defendant from Dowdell on or about March 10, 2000 was a Vavasseur-related profit distribution; (3) that the $36,000 (before wire fees) received by the Defendants on or about August 15, 2001 was a Vavasseur-related profit distribution; and (4) that the Defendant received back all of his investment principal.

In his response of October 31, 2005, the Defendant concedes all but the third point. Specifically, the Defendant admits to having received fifteen profit distributions from Vavasseur from December 8, 1999 to March 7, 2001. These amounts total to $312,862.50 and include $287,362.50 from fourteen distributions plus the $25,500.00 distribution made on March 8, 2000 and alleged by the Receiver. (Def.'s Resp. at 5, n.1). The Defendant also admits that Vavasseur returned to him the full amount of his $500,000.00 cash investment principal on March 21, 2001. Def.'s Resp. at 6. The Defendant, however, does not concede that he received a Vavasseur-related profit distribution in the amount of $36,000.00 on or about August 15, 2001. What the

3

Case 3:03-cv-00052-NKM-BWC   Document 149   Filed 12/16/05   Page 3 of 11   Pageid#: 1071

Defendant does admit is that he received a payment of approximately $36,000.00 on August 15, 2001 from VRJ, Ltd., which he describes as a tax shelter company set up in the Bahamas by his son, Robert June, Jr. He denies that this payment was made with Receivership property. The only remaining question for the Court, therefore, is whether the Receiver has presented evidence sufficient tracing the $36,000.00 distribution back to Vavasseur to entitle the Receiver to summary judgment on this point.

The evidence surrounding the origins of the August 15, 2001 payment of $36,000 (less transfer fees of $27.00) to the Defendant is as follows. On November 1, 1999, the Defendant executed a Discretionary Investment Management Agreement with Vavasseur Corporation, giving Vavasseur the authority to invest or trade any cash, securities, or other principal in the Defendant's account, subject to the terms in the Agreement. (Pls.' Mot. Summ. J. Ex. B). On March 17, 2001, the Defendant received a letter from Ian Collins, as Secretary of Minnstrustees, Ltd., cancelling the agreement because the "position taken by the U.S. Regulators ha[d] resulted in it no longer being tenable for this Company to conduct business with clients domiciled in the United States of America." (Pls.' Mot. Summ. J. Ex. D). The Defendant received by wire transfer a return of his $500,000.00 Vavasseur investment principal on March 21, 2001. (Pls.' Mot. Summ. J. Ex. E & F). The next day, on March 22, 2001, the Defendant wired $500,000.00 to account number 20619 at Banque SCS Alliance (Nassau), Ltd. ("Banque SCS Alliance"), the account of VRJ, Ltd. (Pls.' Mot. Summ. J. Ex. G & F). On August 15, 2001, the Defendant received a wire transfer of $35,973.00 ($36,000.00 less a $27.00 transfer fee deducted by the originating bank) from Banque SCS Alliance, via an intermediary bank in New York. (Pls.' Mot. Summ. J. Ex. H). Finally, on December 20, 2001, the Defendant received a wire transfer of

4

$499,965.00 ($500,000.00 less a $35.00 fee deducted by the originating bank) from Banque SCS Alliance, via an intermediary bank in New York. The Receiver and the Defendant are in dispute over whether the $36,000 payment of August 15, 2001 involved Vavasseur funds.

In its motion for partial summary judgment, the Receiver claims that the $36,000 transfer can be traced back to Vavasseur. The Receiver begins by characterizing the bank account of VRJ, Ltd. at Banque SCS Alliance as a mere conduit for the Defendant's investments in Vavasseur. To this end, the Receiver produces evidence that Robert June, Jr., a close associate of Dowdell involved in recruiting investors for Vavasseur, introduced the Defendant to the Vavasseur program and created VRJ, Ltd., which had Virginia June and her minor children as its beneficial owners. (Pls.' Mot. Summ. J. Exs. A, Response no. 50, P, & L). The Receiver further presents evidence that Robert June, Jr. used VRJ, Ltd. as a conduit for his own Vavasseur investments, citing Dowdell's deposition testimony that VRJ, Ltd. was Robert June, Jr.'s account at Vavasseur and evidence that on May 5, 2000 he transferred his Discretionary Investment Management Agreement to Vavasseur. (Pls.' Mot. Summ. J. Ex. M & P). The Receiver alleges that VRJ, Ltd. served as a conduit for the Defendant's investments as well, the key being VRJ, Ltd.'s account at Banque SCS Alliance, account number 20619, which Robert June, Jr. had set up. (Pls.' Mot. Summ. J. Ex. N). The undisputed evidence shows that the Defendant transferred $500,000.00 to this account just one day after receiving back his investment principal on March 21, 2001, which the Receiver finds to be suspicious in light of statements made by Dowdell about reinvestment of U.S. investor money at that time. According to Dowdell's deposition testimony of June 16, 2004, the money that was returned on March 21, 2001 was immediately brought back into the program through overseas accounts in order to fool the SEC into believing

5

that Vavasseur had dropped its U.S. investors. (Pls. Mot. Summ. J. Ex. S). Dowdell also stated that he explained how to do this to Robert June, Jr., who was in turn responsible for coordinating this reinvestment for his "group." (Pls. Mot. Summ. J. Ex. S.). The Defendant's Guardian admits in affidavit that she and her father reinvested the $500,000 in VRJ, Ltd. on Robert June, Jr.'s recommendation. (Def.'s Resp. Ex. 6).

To prove that this reinvestment was ultimately connected to Vavasseur, the Receiver produces as evidence a portion of Vavasseur's address book, which contains an entry for VRJ, Ltd., which was to receive payments at account 20619 at Banque SCS Alliance in Nassau. (Pls.' Mot. Summ. J. Ex. Q). This, of course, was the same account to which the Defendant invested $500,000.00 on March 22, 2001 and from which he received $36,000.00 on August 15, 2001. The Receiver argues that records regarding the payment and receipt of $36,000 in August 2001 prove conclusively the link between Vavasseur, VRJ, Ltd., and the Defendant. Vavasseur records provided by Dowdell to the SEC show a $36,000 distribution on August 8, 2001 to "R.F. June, Sr." (Pls. Mot. Summ. J. Ex. R). Following this is the record of the Defendant's August 15, 2001 receipt of $35,973.00 ($36,000 minus a $27.00 wire fee) from Banque SCS Alliance, via an intermediary bank in New York. (Pls. Mot. Summ. J. Ex. H). The Defendant admits that this payment was from VRJ, Ltd.'s account. (D. Resp. at 6). Finally, the Receiver points out that the Defendant's 2001 federal tax return reports $70,588.00 of "Vavasseur Income" and argues that this had to have included the $35,973 payment. The Receiver arrives at this conclusion by noting that adding this amount to the other two profit distributions that the Defendant admits

receiving in 2001[1] and taking into account a $10,000 variance results in exactly $70,588.00 in Vavasseur income for the year.

The Defendant admits having invested in VRJ, Ltd., but denies that this investment was in any way related to Vavasseur. The Guardian for the Defendant states that she and her brother made this investment on the recommendation of Robert June, Jr. and that it was their understanding that these investments were not connected to Vavasseur. The Defendant goes on to argue that any assertion of a link between VRJ, Ltd. and Vavasseur is sheer speculation, pointing out that Dowdell testified in deposition that VRJ, Ltd. was an existing company which was already funded before receiving any Vavasseur transfers.[2] (See Dep. of Terry Dowdell, June 16, 2004 at 122). Despite arguing that VRJ, Ltd.'s $36,000 payment to the Defendant "could have been paid" with non-Vavasseur funds, the Defendant offers no evidence as to what those funds might have been. Furthermore, the Defendant takes issue with the Receiver's reliance on Exhibit R, which the Receiver claims shows a $36,000 distribution to the Defendant. He argues that this entry does not have the word "DISTRIBUTION" next to it, unlike other distributions that the Defendant acknowledges having received. The Defendant asserts that the lack of a "distribution date" means that this money was not distributed, but was instead retained for reinvestment, as Dowdell himself explained in deposition. (See Def.'s Resp. Ex. 4 at 203). The Receiver, in response, argues that the Defendant makes too much over the lack of the word

---

[1] The Defendant admits to having received profit distributions of $8,500 on February 7, 2001 and $36,125.00 on March 7, 2001.

[2] The Defendant argues that even the Receiver admitted in his Rule 30(b)(6) deposition that he did not know the source of VRJ, Ltd.'s payments to the Defendant. The Receiver clearly asserts in the Motion for Partial Summary Judgment that the funds came from Vavasseur

7

"DISTRIBUTION" next to the August 8, 2001 entry, pointing out that the Defendant admitted to having received a March 7, 2001 distribution of $36,125.00 even though Dowdell's spreadsheet entry for the transaction of that amount on March 7, 2001 does not say "DISTRIBUTION."

Finally, the Defendant takes issue with the Receiver's use of his 2001 tax return, arguing that if he really did include the $35,973 distribution in Vavasseur income for that year, the total amount would be $80,588 instead of $70,588. In response, the Receiver points out that if the Defendant only had $44,625.00 of Vavasseur income in 2001 (the sum total of the February 7 and March 7 receipts admitted by the Defendant), his tax return overstates Vavasseur income by $25,963.00 that year. The Defendant has no explanation for this, other than to proffer an unsigned amended tax return expressly stating that $70,588 of Vavasseur income was never received.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Issues of material fact are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's function is "not . . . to weigh the evidence and determine the truth of the matter . . . [but to] determin[e] whether there is a need for a trial." *Id.* at 249-50. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving

8

Case 3:03-cv-00052-NKM-BWC    Document 149    Filed 12/16/05    Page 8 of 11    Pageid#: 1076

"DISTRIBUTION" next to the August 8, 2001 entry, pointing out that the Defendant admitted to having received a March 7, 2001 distribution of $36,125.00 even though Dowdell's spreadsheet entry for the transaction of that amount on March 7, 2001 does not say "DISTRIBUTION."

Finally, the Defendant takes issue with the Receiver's use of his 2001 tax return, arguing that if he really did include the $35,973 distribution in Vavasseur income for that year, the total amount would be $80,588 instead of $70,588. In response, the Receiver points out that if the Defendant only had $44,625.00 of Vavasseur income in 2001 (the sum total of the February 7 and March 7 receipts admitted by the Defendant), his tax return overstates Vavasseur income by $25,963.00 that year. The Defendant has no explanation for this, other than to proffer an unsigned amended tax return expressly stating that $70,588 of Vavasseur income was never received.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Issues of material fact are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's function is "not . . . to weigh the evidence and determine the truth of the matter . . . [but to] determin[e] whether there is a need for a trial." *Id.* at 249-50. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving

party may not rest on its pleadings, but rather must present probative and material evidence which would permit a trier of fact to find in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Summary judgment may also be appropriate as to particular issues in a case, as Fed. R. Civ. P. 56(a) permits a claimant to move for summary judgment as to all or any part of his claim. Such adjudications "[serve] the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed. R. Civ. P. 56, Advisory Committee's Note.

### III. Discussion

Having thoroughly considered the record, the Court finds that the Receiver is entitled to summary judgment as to each of the four issues raised. Certainly, summary judgment in favor of the Receiver is proper as to those issues not contested by the Defendant: namely, his receipt of $312,862.50 in Vavasseur-related profit distributions ($287,862.50 plus the $25,000.00 distribution of March 10, 2000) and the return of his entire investment principal of $500,000.00. The Receiver is similarly entitled to summary judgment establishing that the $36,000 payment on August 15, 2001 involved Vavasseur funds because there is no genuine question of fact as to this issue.

At its core, the Defendant's argument against entry of summary judgment on the issue of the $36,000 payment is that the Receiver cannot prove beyond surmise and speculation that VRJ, Ltd. received this money from Vavasseur because he has not produced direct evidence detailing a Vavasseur-to-VRJ, Ltd. transaction of this amount. While that may be the case, the Receiver has proffered considerable documentary evidence to show that the $36,000 ultimately came from

9

Vavasseur. In short, that evidence shows that the Defendant, the son of Dowdell's close associate, Robert June, Jr., received back his entire investment principal of $500,000 on March 21, 2001, only to reinvest that entire amount in VRJ, Ltd. the very next day. Further increasing the suspicious nature of this quick turnaround is the fact that Dowdell himself testified that the monies returned on March 21, 2001 were immediately reinvested to elude the SEC and that Robert June, Jr., who the Defendant's Guardian admits recommended the reinvestment, was responsible for bringing the returned money back to Vavasseur through overseas vehicles. With respect to the $36,000 distribution, Dowdell's testimony and payments spreadsheet for the Defendant establish that VRJ, Ltd. was Robert June, Jr.'s account and that a $36,000 payment was entered on August 8, 2001. Within a week of that, the Defendant received a distribution of the same amount (less transfer fees) from VRJ, Ltd. Placed in context, the timing of Vavasseur's $36,000 payment scheduled to the Defendant and the Defendant's receipt of the same amount goes beyond being merely suspicious. The Defendant seeks to allay that suspicion by pointing to Dowdell's testimony that VRJ, Ltd. had some funding prior to receiving Vavasseur transfers, but does not produce any documentation evidencing such funding or indicating where the $36,000 came from or why it went out to the Defendant when it did. Such a defense is clearly insufficient for surviving summary judgment, a point in the proceedings where the Defendant must present probative and material evidence rather than relying on the pleadings. *See Celotex*, 477 U.S. at 324.

The Court also finds that the Defendant's 2001 tax return provides further corroboration of the Vavasseur origins of the $35,973 transfer because, subject to a $10,000 variance, the amount of Vavasseur income reported is the exact amount of the 2001 distributions admitted by

the Defendant plus the contested $35,973. The Defendant's only attempt to counter this is the unsigned amended tax return submitted as an exhibit which claims that $70,588 of Vavasseur income was never received. The probative value of this return, of course, is diminished by the fact that it does not square with the Defendant's own admission to having received $44,625.00 in profit distributions that year. Thus, the Defendant has produced no probative evidence tending to counter the suggestion that his 2001 tax return corroborates the Vavasseur origins of the August 15, 2001 payment.

## IV. Conclusion

In conclusion, the Court will GRANT the Receiver's Verified Motion for Summary Judgment, finding that the Defendant received $348,862.50 in Vavasseur-related profit distributions, including the $25,500 payment of March 10, 2000 and the $36,000 payment of August 15, 2001, and that he received back his entire investment principal. An appropriate order this day shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Order to all counsel of record.

ENTERED: *[signature]*
United States District Judge

12-16-05
Date