CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 0 9 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, et al., *Plaintiff,* v. VIRGINIA JUNE, Guardian over ROBERT F. JUNE, SR., *Defendant.* | CIVIL ACTION No. 3:03CV00052<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Before the Court is the Receiver's Motion for Show Cause Order, filed on December 1, 2005. In this motion, the Receiver moves the Court for an order requiring Defendant Virginia June, guardian for Robert F. June, Sr., to show cause why she should not be held in contempt for failure to obey this Court's orders requiring the Defendant to diligently pursue the recordation of the second mortgage on Sally Fonner's house executed in favor of the Defendant.

## I. Facts

The Receiver instituted this action against Robert F. June, Sr., on May 22, 2003 in order to disgorge from him the fictitious profits that he received from the Vavasseur Ponzi Scheme.[1] On June 27, 2003, Robert June, Sr., transferred $492,494.02 to Sally Fonner, a friend of the June family, in the form of a loan secured by a promissory note and a second mortgage on her

---

[1] On January 30, 2004, Magistrate Judge B. Waugh Crigler entered an order substituting Virginia June, Guardian for Robert F. June, Sr., as the defendant in this case.

residence in Florida. This mortgage has never been recorded, and is therefore not properly secured, creating the risk that Fonner could cash out the equity in her residence by refinancing the original mortgage. The Receiver, consequently, argues that this loan is little more than an attempt by the Defendant to move assets beyond the reach of the Court in anticipation of an unfavorable outcome to this case.

Disturbed by the unrecorded state of the Fonner mortgage, the Receiver filed a motion on August 10, 2004 requesting an injunction requiring the Defendant to record the mortgage in a manner sufficient to perfect a security interest in Fonner's residence. This Court, under presiding United States District Judge James H. Michael, granted the Receiver's motion on November 11, 2004, directing the Defendant to "record the Second Mortgage in the land records of Florida in the manner required under Florida law to perfect the Defendant's security interest in Sally Fonner's residence within ten (10) days from the entry of this Order[.]" On November 24, 2004, the Defendant filed a motion requesting, *inter alia*, an enlargement of time to record the mortgage due to the Guardian's inability to find an original of the second mortgage or the original or signed copy of the promissory note. The Court granted the Defendant's request on December 3, 2004, extending the date of compliance until December 31, 2004. On December 16, 2004, the Court held a hearing on the Defendant's motion for prepayment of the costs of recording the mortgage. This motion was denied on December 22, 2004. On December 31, 2004, the Defendant filed a motion requesting a continuance of the date of compliance with the injunction until January 31, 2005. In this motion, Counsel for the Defendant stated that on December 17, 2004, he instructed a real estate attorney in Florida to prepare a new mortgage that would be recordable but noted that this assignment had not been completed as of December 30, 2004. On January 7, 2005, the Court granted this request but noted:

> The Court is perturbed that compliance in this matter is taking so long. It is not clear why defense counsel waited until December 17, 2004, to instruct the real estate attorney to prepare a new mortgage. When the court granted the defendant's request for a hearing on the issue of payment, it was not the court's understanding theat the defendant's compliance efforts would be put on hold until the hearing was held on December 16, 2004.

Order at 1 (Jan. 7, 2005)(docket # 86).

On January 31, 2005, the Defendant filed a Motion for Relief from Compliance with Preliminary Injunction Order. In that motion, the Defendant noted that the Florida real estate attorney had finished drafting a mortgage that essentially duplicated the terms of the original second mortgage. Counsel for the Defendant then faxed this draft to Fonner, who stated that she would pass this draft on to James S. Renaldo, her attorney in Florida, for review. Defense Counsel went on to report that he attempted to call Renaldo on four occasions but never received any call back. Thus, the Defendant moved the Court to relieve the Guardian from compliance with the preliminary injunction, unless and until such time as she could secure cooperation from Fonner in executing a copy of the new mortgage. On March 15, 2005, the Court entered an order stating:

> 2. The date by which the defendant shall comply with the November 22, 2004 preliminary injunction is hereby continued until such a time as the defendant is reasonably able to record the Sally Fonner Second Mortgage, whether by the execution of a new mortgage instrument or otherwise;
> 3. The defendant shall diligently pursue other methods of recording the mortgage that do not require the cooperation of Sally Fonner;
> 4. By March 15, 2005, and every 45 days thereafter, the defendant shall show cause what she has done to obtain recordation of the mortgage; . . . .

Order at 3-4 (Mar. 15, 2005) (docket # 101).

The Defendant filed periodic status reports informing the Court of efforts used in recording the mortgage. In the March 18, 2005 status report, the Defendant reported that Fonner had not signed the newly drafted mortgage because of differences between it and the original

mortgage. Again, the Defendant also reported that Defense counsel was unable to get ahold of Renaldo to discuss possible changes. In the April 29, 2005 status report, the Defendant reported that counsel was still unable to get ahold of Renaldo. In the June 14, 2005 status report, the Defendant again reported being unable to get in touch with Renaldo and also being unable to get ahold of Fonner to see if she would repay $300,000 of the loan to be set aside as security for the Receiver's claim. The Defendant also reported that counsel spoke to a Florida attorney about initiating an equitable proceeding in Florida to have a state court there order recordation of the photocopy of the mortgage. However, the Defendant's counsel noted skepticism about whether this would be worthwhile because it could take at least six months to obtain such an order and because Fonner might be able to cash out any equity in the property before the court entered the mortgage recorded. In the August 1, 2005 status report, the Defendant represented that counsel had ceased trying to get ahold of Renaldo and that counsel believed that any further attempts to obtain cooperation from Fonner would be futile. The status reports of September 15, 2005 and November 7, 2005 reported the same. In the December 20, 2005 status report, the Defendant stated that she did not know of any other way of recording the mortgage beyond the filing of suit against Ms. Fonner in Florida, but believed that this issue was moot because the Receiver had filed a complaint against Fonner in this Court.

The Receiver filed this Motion for Show Cause Order and alleges that the Defendant has been purposely dilatory in obtaining a recordation of the second mortgage because she is in collusion with Fonner. In support of this, the Receiver cites the fact that Fonner is a close friend of the June family; that phone records indicate that someone at the Defendant's phone number has called Fonner's number after every significant development in the case; that Robert June, Jr., gave Fonner's fax number to his Realtor as his fax number when he attempted to sell his

Charlottesville residence last year; and that Robert June, Sr., has stayed in Fonner's Florida home on more than one occasion.

In her defense, the Defendant points out that her counsel was in communication with the Receiver during May, 2005 about filing suit against Fonner in Florida. For the same reasons stated in the June 14, 2005 status report, the Defendant's counsel did not think this would be worthwhile. The Defendant also includes an excerpt of correspondence between the Defendant's counsel and the Receiver's counsel, Douglas Scott, in which the latter stated:

> The Fonner mortgage issue concerns me, as it is apparent it concerns you. It may be prudent to institute suit in Florida to require the recordation of the mortgage. However, before we have to go to such lengths, it might be possible to take action against Fonner in the U.S. District Court in Charlottesville.

The Defendant claims that her failure to institute suit in Florida against Fonner was appropriate in light of the time and expense that would involve as well as the fact that the Receiver instituted suit in this Court in August, 2005.

## II. Applicable Law

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt is an appropriate sanction if the court can point to a court order which "set[s] forth in specific detail an unequivocal command" that a party has violated. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986) (citation and internal quotation marks omitted)).

The burden is on the complainant to prove civil contempt by clear and convincing evidence. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995). In order to obtain civil contempt relief for violation of the court's order, the movant must establish by clear and

convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by his or her conduct violated the terms of the decree, and had at least constructive knowledge of such violations; and (4) that the movant suffered harm as a result. *Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

## III. Discussion

Having thoroughly reviewed the matter, the Court finds that the Receiver has presented sufficient evidence to require the Defendant to show cause for why she should not be held in contempt of court for failing to comply with the Court's modified order of March 15, 2005. Certainly, the circumstances of this case suggest that the Defendant is acting in collusion with Fonner to keep substantial amounts of money beyond the reach of the Court in case of an adverse judgment. If that were not the case, it would be hard to understand why the Defendant did not properly record the mortgage in the first place or act with more determination to have it recorded during the past year. Given the suspicious circumstances surrounding the Fonner mortgage, it is also reasonable to suspect that the Defendant's failure to secure the cooperation of Fonner - an undisputed family friend - or institute proceedings in Florida are a part of this collusion. If that is the case, then her efforts thus far are not good faith efforts to comply with the Court's orders.

## IV. Conclusion

For the above stated reasons, the Court shall order the Defendant to show cause for why she should not be held in civil contempt for failing to comply with the Court's order of March 15, 2005. An appropriate order this day shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
United States District Judge

Date: January 9, 2006