

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, JR., et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> VIRGINIA M. JUNE, Guardian for ROBERT F. JUNE, SR., <br><br> *Defendant.* | CIVIL ACTION NO. 3:03CV00052 <br><br><br> MEMORANDUM OPINION <br><br><br><br> JUDGE NORMAN K. MOON |

Before the Court is the Receiver's September 23, 2005 Motion for Partial Summary Judgment. In this Motion, the Receiver moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to enter summary judgment as to five issues related fraudulent conveyances made as part of a Ponzi scheme. For the reasons stated herein, the Court will grant the Receiver's Motion and enter summary judgment as to these issues.

## I. Background

The Receiver brought this action under Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 2 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. The Reciever is acting pursuant to the designation of the Court and under the aegis of the overarching civil action *Securities and Exchange Commission v. Terry L. Dowdell*, Case No. 3:01CV00116, to recover funds illegally disbursed by Terry Dowdell while operating a Ponzi scheme in violation of the Acts. Sections 77v(a) and 78aa vest in the federal courts exclusive jurisdiction

over all suits in law and equity brought to enforce any liability or duty created by the Acts. This court, therefore, has a special brand of pendant jurisdiction over the state-law claims set forth in the Receiver's complaint. Those claims are unjust enrichment (Count One), accounting of funds (Count Two), money had and received (Count Three), and fraudulent conveyance of property (Count Four).

The factual background to this case has been described at length by this Court on numerous occasions and will not be so detailed in this opinion. Suffice it to say that this case arose in the aftermath of a failed Ponzi scheme known as the Vavasseur Program, operated by Terry Dowdell from 1998 through 2001. Dowdell marketed the program as a company involved in trading medium-term debentures and other private bank debt, although no such business activities were ever actually conducted. Instead, Vavasseur was operated as a classic Ponzi scheme, whereby funds from later investors were used to pay earlier investors their promised returns. The remainder of the funds were misappropriated by Dowdell and given to business associates, family, and friends. While many investors lost out under the Vavasseur program, never realizing the profits promised or even getting back all of their principal, some investors did make a profit on their investment. The Defendant was one such lucky investor. The Receiver filed this action, along with other actions targeting similarly situated investors, to avoid the conveyances of Vavasseur funds received by the Defendant.

The Receiver originally moved for partial summary judgment on the issues currently before the Court on July 2, 2004. In that motion, the Receiver moved the Court to enter summary judgment to establish the following:

    I.     The Vavasseur Program was operated at all relevant times as Ponzi scheme;

    II.    Where the existence of a Ponzi scheme is proved, it is conclusively presumed that

the transferor of a fraudulent conveyance made the transfer with actual intent to defraud its creditors;

III. Where the existence of a Ponzi scheme is proved, it is conclusively presumed that the transferor was insolvent on the date of the transfer;

IV. Where the existence of (i) a transfer of property and (ii) an actual intent to defraud by the transferor are established, the burden of going forward shifts to the transferee to prove his defense of good faith and reasonably equivalent value;

V. Where the existence of a Ponzi scheme is established, the transferee's proof that it made a "capital" investment in the scheme does not constitute reasonably equivalent value for the receipt of fictitious profits from the Ponzi scheme; and

VI. The choice of fraudulent conveyance law is determined under the conflicts rules of the law of the forum state and that determination requires the Uniform Fraudulent Transfers Act ("UFTA") be applied in this case; or, in the alternative, the UFTA should be applied under federal common law principles.

On July 9, 2004, however, United States Magistrate Judge B. Waugh Crigler entered an order staying all proceedings in the case pending resolution of the choice of law issue in Section VI of the Receiver's motion. This Court, under presiding United States District Judge James Michael, addressed the choice of law issue in a February 23, 2005 opinion and held that federal common law, in the form of the UFTA, would govern the Receiver's fraudulent conveyance claim. On August 25, 2005, this case was reassigned to the undersigned United States District Judge. The Receiver renewed his motion for partial summary judgment on September 23, 2005 and moved the Court to enter summary judgment on Sections I through V. On October 31, 2005, however, the Defendant moved the Court to reconsider Judge Michael's choice of law determination. The

Court, therefore, put off resolution of the Receiver's motion until the choice of law question could be resolved.

On February 27, 2006, the Court issued an order and memorandum opinion granting the Defendant's motion to reconsider Judge Michael's choice of law determination. The Court concluded that Judge Michael's decision to apply federal common law was erroneous and that Virginia's choice of law principles should determine which jurisdiction's law would govern the Receiver's fraudulent conveyance claim. The Court found that conveyances made by wire transfer would be governed by the law of the jurisdiction wherein the receiving banks were located. With the exception of one conveyance received in the Bahamas, the Defendant received all of his wire transfers at his bank in Michigan. Thus, Michigan's fraudulent conveyance law will govern as to all but one of these wire transfers, the remaining one being governed by Bahamian law.

As to conveyances of funds made by check payments, the Court found in its opinion that the law of the jurisdiction wherein the drawee bank is located will supply the applicable fraudulent conveyance law. The checks received by the Defendant were drawn on a Florida bank. Florida's fraudulent conveyance law therefore applies to these conveyances.

## II. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An entry of summary judgment "is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356

(1991). Issues of material fact are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's function is "not . . . to weigh the evidence and determine the truth of the matter . . . [but to] determin[e] whether there is a need for a trial." *Id.* at 249-50. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Discussion

The legal arguments in the Receiver's motion are grounded in the UFTA and 11 U.S.C. § 548, a provision of the Bankruptcy Code which is nearly identical to the UFTA and subject to the same analysis. *See, e.g., Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon)*, 300 B.R. 57, 63 (Bankr. N.D. Okla. 2003); *Solow v. Reinhardt (In re First Commercial Management Group, Inc.)*, 279 B.R. 230, 240 (Bankr. N.D. Ill. 2002); *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991). Although the Court will not apply the UFTA as a matter of federal common law, it will apply the UFTA as it is codified in Michigan and Florida. *See* MICH. COMP. LAWS §§ 566.31-.43 (2006); and FLA. STAT. §§ 726.101-.201 (2005). This endeavor, however, will include looking to interpretation of the UFTA in other jurisdictions since both Michigan and Florida require their versions of the UFTA to be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of the law among states enacting it." *See* MICH. COMP. LAWS § 566.41; and FLA. STAT. § 726.112. The conclusions reached by the Court in this opinion apply to those transfers governed by Michigan or Florida law. Because neither party has briefed the Court as to the substance of Bahamian fraudulent conveyance law, this opinion's resolution of Sections II through V does not apply to the conveyance governed by

the law of the Bahamas.

### A. Section I - The Vavasseur Program as a Ponzi Scheme

In Section I of his motion for partial summary judgment, the Receiver moves the Court to establish as a matter of law that the Vavasseur Program was operated as a Ponzi scheme at all relevant times. In support of this, the Receiver points to the Expert Report of Harold Martin, the Receivership's accountant, who concluded that Vavasseur was a Ponzi scheme, and Dowdell's affidavit testimony affirming the same. The Receiver also calls on the Court to take judicial notice of Dowdell's criminal conviction pursuant to FED. R. EVID. 201 and the Court's own previous rulings in the SEC case. The Defendant does not dispute this issue and, in fact, concedes that Vavasseur was a Ponzi scheme.

In light of the Receiver's expert report, Dowdell's admissions and criminal conviction, and the Court's own rulings on the issue, it is clearly established that Vavasseur operated as a Ponzi scheme at all times. The Receiver, therefore, is entitled to summary judgment on this point.

### B. Section II - Ponzi Scheme Operators and Actual Intent to Defraud Creditors

The Receiver next moves the Court to establish as a matter of law that "where the existence of a Ponzi scheme is proved, it is conclusively presumed that the transferor of a fraudulent conveyance made the transfer with actual intent to defraud its creditors." The Receiver provides two reasons this conclusion. First, courts have widely found that Ponzi scheme operators necessarily act with actual intent to defraud creditors due to the very nature of their schemes. For instance, the court in *In re Independent Clearing House* explained,

> One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a

> limited resource and will eventually run dry. The perpetrator must know that
> the scheme will eventually collapse as a result of the inability to attract new
> investors. The perpetrator nevertheless makes payments to present investors,
> which, by definition, are meant to attract new investors. He must know all
> along, from the very nature of his activities, that investors at the end of the
> line will lose their money. Knowledge to a substantial certainty constitutes
> intent in the eyes of the law . . . and a debtor's knowledge that future
> investors will not be paid is sufficient to establish his actual intent to defraud
> them.

*In re Independent Clearing House*, 77 B.R. 843, 860 (C.D. Utah 1987); *see also In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d 528, 536 (9th Cir. 1990); *Emerson v. Maples (In re Mark Benskin Co., Inc.)*, 1995 U.S. App. LEXIS 16053, at 12 (6th Cir. 1995); *Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.)*, 280 B.R. 103, 110 (Bankr. D. Pa. 2002); and *Jobin v. Ripley (In re M&L Business Machine Co., Inc.)*, 198 B.R. 800, 806-07 (D. Colo. 1996).

Second, the Receiver points to Dowdell's criminal conviction as proof of his actual intent to defraud his creditors. Numerous courts have found that a criminal conviction for operating a Ponzi scheme establishes the operator's fraudulent intent and precludes relitigation of this issue. *Floyd v. Dunson (In re Rodriguez)*, 209 B.R. 424, 433 (Bankr. S.D. Tex. 1997); and *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 440 (Bankr. N.D. Ill. 1995), citing, *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983) and *Nathan v. Tenna Corp.*, 560 F.2d 761, 763-64 (7th Cir. 1977).

The Defendant does not contest the Receiver's argument that Dowdell acted with actual intent fraudulent intent. In fact, he appears to concede the issue, acknowledging that Dowdell "duped" investors into investing in Vavasseur. (Def.'s Resp. In Opp. To Pl.'s Mots. For Partial Summ. J. at 3, Docket No. 136).

The Court finds the Receiver's argument to be well taken. This is especially so in the

instant case because Dowdell admits that Vavasseur never conducted any legitimate business, that it was insolvent from its inception, and that the only source of funds to pay off early investors were the funds of later investors. (Dowdell Aff. 4-5, July 13, 2004). Under these circumstances, Dowdell had to have known that his scheme could not go on forever and that every payment of a fictitious profit to one investor added to the debt he owed other investors. Thus, the conclusion that Dowdell conveyed investor funds with actual intent to defraud other investors is conclusively established, entitling the Receiver to summary judgment on this point.

C. Section III - Ponzi Schemes and the Insolvency of the Operator/Transferor

In Section III, the Receiver argues that where the existence of a Ponzi scheme is proved, it is conclusively presumed that the transferor was insolvent on the date of the transfer. Again, the Defendant does not contest the Receiver's argument nor does he claim that Dowdell was solvent at the times Dowdell conveyed fictitious profits to him.

The Court will grant the Receiver's motion as to this point. Dowdell's insolvency at the date of the transfers is established not only by his own admission that Vavasseur was insolvent from its inception, but also by a considerable body of case law establishing that the operator of a Ponzi scheme is insolvent from the scheme's inception. *See, e.g., In re Rodriguez*, 209 B.R. at 432; *In re Independent Clearing House Co.*, 77 B.R. at 871; and *In re Taubman*, 160 B.R. 964 (Bankr. D. Ohio 1993), citing *Cunningham v. Brown*, 265 U.S. 1, 7 (1924).

D. Section IV - The Transferee's Defense of Good Faith and Reasonably Equivalent Value

The Receiver next argues that where a plaintiff proves a transfer of property and the transferor's actual intent to defraud, the burden shifts to the transferee to prove that he received the transfer in objective good faith and for reasonably equivalent value. The Receiver contends

that this defense allows the transferee to retain the principal returned to him.

The contentions made by the Receiver are well established at law, entitling him to an entry of summary judgment as to these issues. This good faith defense is found in Section 8(a) of the UFTA and provides that with respect to a transferees who have received conveyances made with actual intent to defraud, "[a] transfer or obligation is not voidable under Section 4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Identical provisions are found in the Michigan and Florida versions of the UFTA at MICH. COMP. LAWS § 566.38(1) and FLA. STAT. § 726.109(1), respectively. Courts have widely held that the transferee bears the burden of establishing this affirmative defense. *See, e.g., Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) (noting that transferees have the burden of establishing the good faith defense under Florida law); *In re M & L Business Machine Co.*, 84 F.3d at 1338 ("Under § 548(c), [the transferee] has the burden of establishing good faith."); *Noland v. Hunter (In re National Liquidators, Inc.)*, 232 B.R. 99, 102 (Bankr. S.D. Ohio 1999) ("In order for the Defendant to avail herself of the protection afforded by § 548(c), she must prove that she received the false profit in good faith and in exchange for value."); *Chapman v. Baldi (In re Gropman, Inc.)*, 2002 U.S. Dist. LEXIS 15654 (N.D. Ill. 2002).

In order to establish the element of good faith, the transferee must prove that he received the conveyance in objective good faith. *Soule v. Alliot (In re Tiger Petroleum Co.)*, 319 B.R. 225, 235 (Bankr. N.D. Okla. 2004); *In re M & L Business Machine Co.*, 84 F.3d at 1338. That is, the transferee must show not that he was subjectively unaware of the transferor's fraudulent intent, but rather that he did not have knowledge of facts that should have reasonably put him on notice that the transfer was made in order to delay, hinder, or defraud creditors of the debtor. *See,*

*e.g., United States v. Romano*, 757 F. Supp. 1331, 1338 (M.D. Fla. 1989); *Plotkin v. Pomona Valley Imports (In re Cohen)*, 199 B.R. 709, 719 (Bankr. Fed. App. 1996); *Fisher v. Swllis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 878 (Bankr. N.D. Ill. 2000); *In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d at 536. An investor's lack of actual knowledge of the transferor's fraudulent purpose is relevant to determining whether he received the conveyances in objective good faith, but it is not dispositive. *In re Tiger Petroleum Co.*, 319 B.R. at 325-326.

The second component of this defense is that is that the investor gave reasonably equivalent value in consideration for the conveyances received. *See* MICH. COMP. LAWS § 566.38(1) and FLA. STAT. § 726.109(1). The burden of proof remains with the Defendant as to this component as well. *See, e.g., In re World Vision Entm't, Inc.*, 275 B.R. at 658; and *In re M & L Business Machine Co.*, 166 B.R. 723, 724 (Bankr. D. Colo. 1993).

The Defendant does not dispute this characterization of the UFTA's good faith defense. Instead, he argues that this defense, which allows a transferee to retain his return of investment principal, is inapplicable to the instant case because the Receiver had previously stated in court that he was not asking the Defendant to disgorge the principal he received back. The Defendant's focus on the extent of the relief sought, however, is misplaced. An examination of the UFTA reveals that the applicability of this good faith defense hinges on the theory of fraudulent transfer advanced by the plaintiff rather than on the amount of relief sought.

Under the UFTA, a receiver seeking to recover investor funds conveyed as part of a Ponzi scheme has two available theories: constructive fraud and actual fraud. *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 483 (D. Conn. 2002); *Cheswell, Inc. v. Premier Homes & Land Corp.*, 319 F. Supp. 2d 135, 139 (D. Mass. 2004); Mark A. McDermott, *Ponzi Schemes and the Law of Fraudulent and Preferential Transfers*, 72 AM. BANKR. L.J. 157, 160

(1998). Under a theory of constructive fraud, a plaintiff must prove that the debtor made the transfer without receiving a reasonably equivalent value in exchange and that the debtor was insolvent at that time or that he became insolvent as a result of the transfer. *See* MICH. COMP. LAWS § 566.34(1)(b); and FLA. STAT. § 726.105(1)(b). A claim of actual fraud, or fraud in fact, requires the plaintiff to prove that the transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor. *See* MICH. COMP. LAWS § 566.34(1)(a); and FLA. STAT. § 726.105(1)(a). If the plaintiff shows that the transfer was made with actual intent to defraud, then the burden shifts to the defendant to make the good faith defense outlined above. *See* MICH. COMP. LAWS § 566.38(1) and FLA. STAT. § 726.109(1). This defense is applicable in all cases involving actual fraudulent intent because proof of such intent allows for the avoidance of the entire conveyance to the defendant, not just the return of investment principal. *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 759 (7th Cir. 1995); *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 169 (N.D. Ill. 1998); *In re Agricultural Research & Tech. Group, Inc.*, 916 F.2d at 538; *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983); *Gill v. Maddalena (In re Maddalena)*, 176 B.R. 551, 555 (Bankr. C.D. Cal. 1995). Thus, a defendant who wishes to retain the principal he received back must establish the good faith defense when the plaintiff has established that the transferor conveyed funds to him with actual intent to defraud creditors. Given that the Receiver is clearly pursuing a theory of actual fraud, the UFTA statutory scheme places the burden of establishing the good faith defense on the Defendant, notwithstanding the Receiver's earlier claims in court that the law allowed the Defendant to retain his investment principal.

E. Section V - A Capital Investment in a Ponzi Scheme as Reasonably Equivalent Value for Fictitious Profits Received

Finally, the Receiver moves the Court to establish as a matter of law that where the

existence of a Ponzi scheme is established, the transferee's proof that it made a "capital" investment in the scheme does not constitute reasonably equivalent value for the receipt of fictitious profits. Again, the Defendant makes no attempt to dispute the Receiver's characterization of the law in this regard.

The contention advanced by the Receiver has been widely accepted by courts and this Court stands in agreement with them. *See, e.g., Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996); *Scholes v. Ames*, 850 F. Supp. 707, 715 (N.D. Ill. 1994); *In re Taubman*, 160 B.R. at 987; *In re M&L Bus. Mach. Co.*, 160 B.R. at 858 (Bankr. D. Colo. 1993); *In re Independent Clearing House Co.*, 77 B.R. at 857 (D. Utah 1987); and *Lawless v. Anderson (In re Moore)*, 39 B.R. 571, 573 (Bankr. M.D. Fla. 1984). As Judge Posner explained in *Scholes*,

> A profit is not offset by anything; it is the residuum of income that remains when costs are netted against revenues. The paying out of profits to [the defendant] not offset by further investments by him conferred no benefit on the corporations but merely depleted their resources faster.

*Scholes*, 56 F.3d at 758. Although the return of the Defendant's investment principal was offset by the Defendant's initial investment in Vavasseur, payments in excess of that amount were not offset by anything since Vavasseur had no source of money other than investor funds. The Defendant's capital investment in Vavasseur, therefore, does not constitute fair and adequate consideration for the fictitious profits he received from the scheme.

The Receiver's point, in sum, is well taken and summary judgment will be entered as to this issue.

## IV. Conclusion

In conclusion, the Court will grant the Receiver's Motion for Partial Summary Judgment

in its entirety. Accordingly, it is conclusively established that the Vavasseur program was at all times a Ponzi scheme; that Dowdell, as operator of the Vavasseur Ponzi scheme, made the conveyances in question with actual intent to defraud; that Dowdell, as operator of Vavasseur, was insolvent on the date of these transfers; that the Defendant has the burden of establishing that he received the transfers in good faith and in exchange for a reasonably equivalent value; and that the Defendant's capital investment in the scheme does not constitute reasonably equivalent value for the receipt of fictitious profits from Vavasseur.

The Clerk of the Court hereby is directed to send a certified copy of this Opinion to all counsel of record.

ENTERED: *[signature]*
United States District Judge

Date: March 17, 2006