CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
To C'ville
JUN 20 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ROY M. TERRY, JR., and DURRETTE BRADSHAW PLC, RECEIVER FOR: TERRY L. DOWDELL *ET AL*.., <br><br> *Plaintiffs,* <br><br> v. <br><br> VIRGINIA M. JUNE, guardian for ROBERT F. JUNE, SR., <br><br> *Defendant.* | CIVIL ACTION NO. 3:03-CV-00052 <br><br><br> OPINION AND ORDER <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's motion for clarification of the Court's March 17, 2006 memorandum opinion ("opinion"), filed June 9, 2006.

Defendant states that in Section D of the Court's opinion, the Court "indicates" that if Robert F. June, Sr. wishes to retain the $500,000 in principal that he invested in the Vavasseur program, a Ponzi scheme orchestrated by Terry Dowdell, which principal was subsequently returned to him by Vavasseur Corp. on December 20, 2001, he must establish a good faith defense under the Uniform Fraudulent Transfers Act (UFTA). Defendant then surmises that the Court "was probably unaware" that the Receiver had consciously made an election on the record on September 10, 2004, before United States Magistrate Judge B. Waugh Crigler not to ask Mr. June to return the $500,000. Arguing that the Court is constrained by the "law of the case" doctrine, and stressing that he relied on the Receiver's representation in conducting discovery, Defendant requests a clarification that the return of the $500,000 of principal is not part of the

relief sought in this case.[1]

The opinion makes clear that the Court was aware of the Receiver's prior "election," and that the Receiver nonetheless retains the right to seek return of the $500,000 if the evidence establishes that Dowdell transferred it with actual intent to delay, hinder, or defraud his creditors:

> If the plaintiff shows that the transfer was made with actual intent to defraud, then the burden shifts to the defendant to make the good faith defense outlined above . . . . Given that the Receiver is clearly pursuing a theory of actual fraud, the UFTA statutory scheme places the burden of establishing the good faith defense on the Defendant, notwithstanding the Receiver's earlier claims in court that the law allowed the Defendant to retain his investment principal.

Terry v. June, __ F.Supp.2d __, 2006 WL 733965 *6 (W.D. Va. 2006). This language makes clear that the burden of establishing a good faith defense will only be triggered if the Receiver makes the required showing of actual intent.

Earlier in the opinion, the Court had found that there was no material issue of disputed fact that the Vavasseur program was a Ponzi scheme, and that because of the very nature of a Ponzi scheme, every payment by the scheme's operators of a fictitious <u>profit</u> to one investor added to the debt owed other investors and therefore a conclusive presumption existed that such payments are made with actual intent to defraud other investors. *Id.* at *5. By its own terms, this irrebuttable presumption does not extend to transfers of principal. However, inapplicability of

---

[1] Defendant also seeks clarification that the law governing Dowdell's transfer of the $500,000 is not the Michigan version of the UFTA. Under Virginia choice-of-law principles, in the case of a fraudulent conveyance made by wire transfer, the law of the jurisdiction where the transfer is completed governs. *Terry v. June*, 420 F. Supp. 2d 493, 504 (W.D. Va. 2006). A wire transfer is "completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.*; Va. Code Ann. §8.4A-104(a). Whether the Bahamian bank where a corporation owned by Robert June, Jr., Virginia June, and Cody June held an account to which $500,000 was transferred by wire en route to Defendant's bank account in Michigan (*see* P. MPSJ, Sept. 23, 2005, Exh. I) qualifies as the receiving bank has not yet been decided. Nor has the possible application of Virginia's public policy exception to the Bahamian law of fraudulent transfers been examined. Both parties will have the opportunity to brief these issues before the Court enters the clarification Defendant seeks.

the presumption to transfers of principal is no bar to a successful fraudulent conveyance claim based on actual intent to defraud.

Although the Receiver may have taken the position at a hearing that he does not seek return of the $500,000,[2] if the evidence obtained by discovery supports a finding that Dowdell transferred this principal to Defendant with actual intent to delay, hinder, or defraud his creditors, the Court's view that Defendant must establish a good faith defense shall prevail:

> [A receiver] is an officer of the court; his appointment is provisional . . . He is appointed for the benefit of all parties who may establish rights in the cause. The money in his hands is *in custodia legis* for whoever can make out a title to it. It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court.

*Booth v. Clark*, 58 U.S. 322, 331 (1854); *see also Ledbetter v. Farmers Bank & Trust Co.*, 142 F.2d 147, 150, (4th Cir.), *cert. denied* 323 U.S. 719 (1944).

Defendant's complaint that he has conducted discovery in reliance on the Receiver's election is well-taken. The Court therefore ORDERS the Receiver to inform the Court within fourteen (14) days of this Opinion and Order whether the evidence obtained through discovery supports a finding that Dowdell's transfer of $500,000, received by Defendant on December 20, 2001, was made with actual intent to delay, hinder, or defraud the Vavasseur program's creditors. If the evidence does support such a finding, the Court and the parties will confer to reopen discovery and set deadlines. Otherwise, the parties shall proceed to set a date for trial.

---

[2] None of the cases cited by the Defendant with regard to the "law of the case" doctrine are apposite. Magistrate Judge Crigler's questioning about the Receiver's "election" not to seek return of the $500,000 at a motions hearing is simply not analogous to a court deciding upon a rule of law. *See JH ex rel. JD v. Henrico County School Bd.*, 395 F.3d 185, 197 n.9 (2005) ("The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Opinion and Order to all counsel of record.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

June 20, 2006
Date